ROBERT WALSH

*v.*

JOHN O'NEILL *et al.*

*Opinion filed October 24, 1901.*

CREDITORS' BILLS—*when a conveyance will not be set aside.* Even though the evidence is sufficient to show that a conveyance by a debtor was made to defraud or hinder certain of his creditors, yet unless the other parties to the transaction were parties to the fraud the security obtained by them for their *bona fide* claims can not be set aside or taken from them.

*O'Neill* v. *Walsh,* 92 Ill. App. 61, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. JOHN SMALL, Judge, presiding.

J. W. DOWNEY, for appellant.

FRED MORIARTY, and EGBERT PHELPS, for appellees.

Mr. Justice Carter delivered the opinion of the court:

This was a creditor's bill brought by appellant, Walsh, in the Will circuit court, to set aside a certain deed of trust given by appellee John O'Neill on certain lots in Joliet to secure a note of $1500, made payable five years after its date, to his own order, and endorsed by him in blank and delivered to the other appellees, Mary K. O'Neill, Margaret L. O'Neill and Anna Moriarty. The charge in the bill, which was denied by the answer, was, that the deed of trust was made without any consideration and to defraud the complainant and other creditors of said John O'Neill. The answer also set up *laches* as a defense. The cause was referred to the master, who reported the evidence, together with his conclusions, sustaining the bill, and a decree was rendered as recommended by the master. The Appellate Court reversed the decree and remanded the cause, with directions to dismiss the bill, and from that judgment Walsh took this appeal.

The evidence was that Walsh had recovered a judgment against John O'Neill in 1882 for $427.27, and that upwards of two years later execution was issued on the judgment and returned "no property found." When the judgment was rendered said O'Neill was the owner of an undivided one-sixth interest in the lots described in the deed of trust, as one of the heirs of his father, who had previously died, subject, however, to an estate of homestead and dower of his mother in one of the lots and dower in the other. Said John O'Neill was married and had three young children. In the same year the judgment was rendered (1882) his wife died, and he being unable to take care of his children, arranged with his mother and his three sisters living with her to take and care for them at the home of his mother on one of said lots. Two of his said sisters were young women earning their own living by teaching, clerking, etc. The other was married. The testimony was that he agreed with

his sisters at the time that he would make it all right and would pay them out of his interest in the property. His mother was unable, financially, to bring up and support his said children, but his sisters, appellees herein, from their earnings were able to do so. In 1891 John O'Neill joined with the other appellees, his three sisters, in a quit-claim deed to his mother, conveying to her all of his interest in said lots. At that time he owned an undivided one-fourth of the property, subject to the homestead and dower of his mother, his two brothers having died without children and unmarried. In June, 1895, his mother died intestate, leaving said John and his said sisters her only heirs-at-law. The trust deed in question was executed December 3, 1896, soon after said John had received notice from the attorney of Walsh that unless his judgment should be paid he would proceed to revive it and make it out of the property. About a year later the judgment was revived and entered for $813.77, and after return of execution unsatisfied, this bill was filed.

While there was great delay on the part of the appellant in enforcing his judgment, it is by no means clear that the interest of John O'Neill in the property prior to the death of his mother was such that the judgment, or any considerable part of it, could have been collected. But be that as it may, we are of the opinion that the case must turn on the evidence given upon the issue of fraud and lack of consideration, made by the bill and answer. The evidence shows that before the note and the deed of trust were given the parties had an accounting, and agreed upon the amount due from appellee John O'Neill to the other appellees, Mary K. and Margaret L. O'Neill and Anna Moriarty, and fixed the amount at $1500,— the amount for which the note was given. The transaction was but the carrying into effect of the prior agreement to pay, or secure payment out of the property. It is not contended the amount was unreasonable or the charge excessive. There were apparently some circum-

stances to cast suspicion upon the good faith of John O'Neill in the transaction, but mere suspicion is not sufficient to prove fraud, and there was no evidence whatever, aside from the relationship between the parties and the long delay in demanding payment or settlement, that the appellees, the said Mary, Margaret and Anna, did not have a just demand against their brother, John, for the full amount for which the note was given. It appears, however, that he was wholly unable to pay them until his mother died and he became entitled to one-fourth of the property. They had in part applied their own earnings for many years in the support of John's children, and had relied, as they testified, on his promise of payment. It cannot be said that there was any greater delay on their part in enforcing payment than there was on the part of Walsh, although it is said a part of their claim was barred by the statute.

But if it were conceded that the evidence was sufficient to prove that the conveyance was made by John O'Neill to defraud or to hinder and delay the appellant and other of his creditors in the collection of their demands, still, unless the other parties to the transaction were also parties to the fraud, the securities obtained by them for their claims cannot be set aside or be taken from them;—and upon this branch of the case we have been unable to find any evidence whatever that they even knew that John O'Neill was indebted to Walsh or to any one else. The evidence does not show that they were mere volunteers, nor is it sufficient to show fraud on their part.

We regard the case as clearly distinguishable from *Frank* v. *King*, 121 Ill. 250, *Dillman* v. *Nadelhoffer*, 162 id. 625, and others cited by appellant.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*